## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) MAX FEDERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) | |
| Plaintiff, | ) | Case No. 17-cv-183-JED-FHM |
| | ) | **CLASS ACTION** |
| v. | ) | **COMPLAINT FOR** |
| 1) ONEOK PARTNERS, L.P., | ) | **VIOLATION OF THE** |
| 2) TERRY K. SPENCER, | ) | **FEDERAL SECURITIES LAWS** |
| 3) JOHN W. GIBSON, | ) | |
| 4) MICHAEL G. HUTCHINSON, | ) | **JURY TRIAL DEMANDED** |
| 5) GARY N. PETERSEN, | ) | |
| 6) JULIE H. EDWARDS, | ) | |
| 7) JIM W. MOGG, | ) | |
| 8) CRAIG F. STREHL, and | ) | |
| 9) STEVE J. MALCOLM, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Max Federman ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This is a class action brought on behalf of the public unitholders of ONEOK Partners, L.P. ("ONEOK Partners" or the "Partnership") against ONEOK Partners and its Board of Directors (the "Board" or the "Individual Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder and to enjoin the vote on a proposed transaction, pursuant to which ONEOK Partners will be acquired by ONEOK, Inc. ("ONEOK Inc."), through New Holdings Subsidiary LLC ("Merger Sub") (the "Proposed Transaction").

2.      On February 1, 2017, ONEOK Partners issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which ONEOK Inc. will acquire the remaining units of ONEOK Partners it did not already own.  Under the terms of the Merger Agreement, each outstanding ONEOK Partners common unit not owned by ONEOK Inc. or its subsidiaries will be converted into the right to receive 0.985 of a share of ONEOK Inc. common stock (the "Merger Consideration").  The Proposed Transaction is valued at approximately $9.3 billion.

3.      On March 7, 2017, ONEOK Partners and ONEOK Inc. filed with the United States Securities and Exchange Commission ("SEC") a joint Registration Statement on Form S-4 (the "Registration Statement") in connection with the Proposed Transaction.   The Registration Statement, which recommends that ONEOK Partners unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) certain financial projections of ONEOK Partners, ONEOK Inc. and the pro forma company ("Pro Forma ONEOK") utilized by the Partnership's financial advisor, Barclays Capital Inc. ("Barclays"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses prepared by Barclays in connection with the rendering of its fairness opinion; and (iii) potential conflicts of interest.   The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as ONEOK Partners unitholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, ONEOK Partners' public unitholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin

the unitholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  ONEOK Partners is headquartered in this District.  Moreover, each of the Individual Defendants, as Partnership officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous unitholder of ONEOK Partners.

9.     Defendant ONEOK Partners is a Delaware limited partnership with its principal executive offices located at 100 West Fifth Street, Tulsa, Oklahoma 74103.  ONEOK Partners' common stock is traded on the New York Stock Exchange under the ticker symbol "OKS."

10.     Defendant Terry K. Spencer ("Spencer") is President and Chief Executive Officer

("CEO") of both ONEOK Partners and ONEOK Inc.  Defendant Spencer has been a director of the Partnership since January 2010.

11.     Defendant John W. Gibson ("Gibson") is non-executive Chairman of the Board and Chairman of the ONEOK Inc. board of directors.  Defendant Gibson previously served as CEO of the Partnership from 2007 through January 2014, and served as President of the Partnership from 2010 through 2011.  Defendant Gibson also previously served as CEO of ONEOK Inc. from 2007 through January 2014, President of ONEOK Inc. from 2010 through 2011 and was appointed Chairman of the ONEOK Inc. board of directors in May 2011.  Defendant Gibson has served as Chairman of the board of directors of ONE Gas, Inc. ("ONE Gas"), ONEOK Inc.'s natural gas distribution business which was spun off in 2014, since 2014.

12.     Defendant Michael G. Hutchinson ("Hutchinson") has been a director of the Partnership since April 2015 and served as a member of the ONEOK Partners conflicts committee (the "Conflicts Committee").  Defendant Hutchinson has served as a director of ONE Gas since 2014.

13.     Defendant Gary N. Petersen ("Petersen") has been a director of the Partnership since May 2006.  Defendant Petersen served as a member of the Conflicts Committee.

14.     Defendant Julie H. Edwards ("Edwards") has been a director of the Partnership since August 2009.  Defendant Edwards is also a director of ONEOK Inc.

15.     Defendant Jim W. Mogg ("Mogg") has been a director of the Partnership since August 2009.  Defendant Mogg is also a director of ONEOK Inc.

16.     Defendant Craig F. Strehl ("Strehl") has been a director of the Partnership since August 2009.  Defendant Strehl served as a member of the Conflicts Committee.

17.     Defendant Steven J. Malcolm ("Malcolm") has been a director of the Partnership since January 2012.  Defendant Malcolm is also a director of ONEOK Inc.

18.     Defendants Spencer, Gibson, Hutchinson, Petersen, Edwards, Mogg, Strehl and Malcolm are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     ONEOK Inc. is an Oklahoma corporation with its principal executive offices located at 100 West Fifth Street, Tulsa, Oklahoma 74103.  As of March 3, 2017, ONEOK Inc. owned 41.2% of ONEOK Partners.  ONEOK Inc.'s common stock is traded on the New York Stock Exchange under the ticker symbol "OKE."

20.     Defendant ONEOK Partners GP, L.L.C. ("ONEOK Partners GP") is a Delaware limited liability company and the general partner of ONEOK Partners.

21.     Merger Sub is a Delaware limited liability company and a wholly-owned subsidiary of ONEOK Inc.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own ONEOK Partners common units (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained

through discovery, Plaintiff believes that there are thousands of members in the Class.  As of December 31, 2016, there were 212,837,980 Partnership common units issued and outstanding. All members of the Class may be identified from records maintained by ONEOK Partners or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

25.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

26.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Partnership Background and Strong Financial Outlook**

29.     ONEOK Partners is one of the largest publicly traded master limited partnerships and a leader in the gathering, processing, storage and transportation of natural gas in the United States. The Partnership also owns one of the nation's leading natural gas liquids ("NGL") systems, connecting NGL supply in the Mid-Continent, Permian and Rocky Mountain regions. The Partnership operates in three business segments: natural gas gathering and processing, natural gas liquids, and natural gas pipelines.

30.     The Partnership's recent financial results underscore its promising prospects. On August 2, 2016, ONEOK Partners announced its second quarter 2016 financial results. For the quarter, the Partnership reported net income attributable to ONEOK Partners of $261.5 million, a 25% increase compared to the second quarter of 2015. Adjusted earnings before interest, taxes, depreciation and amortization ("EBITDA") was $455.8 million, an 18% increase compared to the second quarter of 2015. Natural gas volumes and NGL volumes fractionated increased 12% and 10%, respectively, compared to the second quarter of 2015. Commenting on the quarter's financial results, defendant Spencer stated:

> ONEOK Partners continues to post solid 2016 financial results as natural gas and natural gas liquids volumes increased across all three business segments year over year. Our well-positioned assets and approximately $9 billion in capital-growth projects and acquisitions since 2006 provide opportunities for continued earnings growth without significant additional infrastructure needs or capital spending, particularly in the natural gas liquids segment.
>
> Our natural gas liquids segment continues to be a key driver of fee-based growth for the partnership, with segment operating income and adjusted EBITDA in the first half of 2016 increasing more than 25 percent compared with the same period last year. We continue to expect a significant benefit from ethane recovery beginning in 2017 and have already observed intermittent periods of higher recovery on parts of our system this year.

* * *

7

Our natural gas gathering and processing segment also recorded increased volumes in the first half of 2016 and continues to benefit from contract restructuring efforts that began in 2015. Our continuing contract restructuring efforts contributed to an 8 cent, or 12 percent, increase in the segment's average fee rate for the second quarter, compared with the first quarter 2016.

We've taken the commercial, operational and financial steps to enable us to continue to grow our earnings in spite of a difficult commodity price environment. Our focus on stable, fee-based earnings growth has positioned us well for the remainder of 2016.

31.     On November 1, 2016, the Partnership announced its third quarter 2016 financial results.  The Partnership reported net income attributable to ONEOK Partners of $274.3 million, a 21% increase compared to the third quarter of 2015.  Adjusted EBITDA was $469.4 million, a 16% increase compared to the third quarter of 2015.  Natural gas volumes processed and NGL volumes fractionated increased 13% and 3%, respectively, compared to the third quarter of 2015.  Defendant Spencer commented on the Partnership's strong third quarter financial results, noting:

ONEOK Partners continues to post strong financial results and expects to finish 2016 in line with financial guidance. Third-quarter 2016 results benefited from increased natural gas volumes gathered and processed and higher NGL volumes fractionated from recently connected natural gas processing plants and increased ethane recovery compared with last year.

The natural gas liquids segment expects to benefit from a ramp up in volumes at the five third-party natural gas processing plants connected to our system in 2016 and from the segment's competitive asset position in active shale plays such as the STACK and SCOOP plays in Oklahoma. We expect increased producer drilling in these plays through the remainder of the year and into 2017, and continue to expect a favorable impact from ethane recovery across our system as new petrochemical facilities come online during the year.

Our Bear Creek natural gas processing plant was completed in August and is currently 50 percent utilized, contributing to expected fourth-quarter Williston Basin volume growth in the natural gas gathering and processing segment. Through October 2016, we've seen the completion of large multi-well pads in the Mid-Continent, specifically in the STACK play, supporting our expectation for a year-end volume ramp up in the segment and setting the stage for additional volume growth in 2017.

In our natural gas pipelines segment, we've been successful in our strategy to move markets closer to supply. In October, we completed the second phase of the joint venture Roadrunner Gas Transmission Pipeline and the complementary ONEOK WesTex expansion project, connecting markets in Mexico with upstream supply basins in West Texas and the Mid-Continent. Both projects were completed ahead of original schedules and below cost estimates and are expected to provide the partnership with stable, long-term fee-based earnings.

The partnership's balance sheet remains healthy and we continue to reduce our leverage position. Financially and operationally, we're in a strong position, and we have the flexibility to take advantage of opportunities to create additional shareholder value.

32.     On February 27, 2017, the Partnership announced its fourth quarter and full year 2016 financial results.  For the full year 2016, the Partnership reported net income attributable to ONEOK Partners of $1,066.8 million, an 81% increase compared to the full year 2015.  Adjusted EBITDA was $1,840.3 million, an 18% increase compared to the full year 2015.  For the quarter, net income attributable to ONEOK Partners was $277.5 million, compared to $7.2 million in the fourth quarter of 2015.  Commenting on the Partnership's financial results, defendant Spencer stated:

ONEOK Partners reported strong 2016 financial performance as adjusted EBITDA increased nearly 18 percent compared with 2015, driven by higher fee-based earnings in all three business segments. The partnership's full-year distribution coverage of 1.09 times improved substantially compared with 2015.

The natural gas gathering and processing segment's 2016 adjusted EBITDA increased 40 percent compared with 2015, driven by higher average fee rates from contract restructuring efforts primarily completed in 2015 and benefiting 2016 earnings.  The natural gas liquids and natural gas pipelines segments also reported higher full-year 2016 results, largely from increased fee-based exchange and transportation services, respectively. Higher natural gas volumes processed and higher natural gas liquids (NGL) volumes fractioned also helped increase full-year 2016 earnings.

**The Sale Process**

33.     In mid-October 2016, ONEOK Inc. management determined to acquire the common units of ONEOK Partners not already owned by ONEOK Inc., and discussed the timing and process for such a transaction throughout the remainder of the year.

34.     On December 20, 2016, ONEOK Inc. management requested that the Board authorize the Conflicts Committee to take steps to prepare to evaluate and respond to a proposal, if made, including selecting and engaging independent legal and financial advisors.

35.     From January 11, 2017 to January 29, 2017, ONEOK Inc. and ONEOK Partners GP management provided Barclays with financial and due diligence information, including five-year projections for ONEOK Inc., ONEOK Partners and Pro Forma ONEOK.

36.     On January 24, 2017, defendant Spencer sent the Conflicts Committee a non-binding proposal to acquire the common units of ONEOK Partners not already owned by ONEOK Inc. in exchange for shares of ONEOK Inc. common stock at an exchange ratio of 0.897 of an ONEOK Inc. share and, if the merger was consummated, an expected increase to the quarterly dividend of ONEOK Inc. common stock to $0.66 per share.  ONEOK Inc. also sent a draft merger agreement to the Conflicts Committee's legal advisor, which included, among other things, (i) approval by a majority of the outstanding ONEOK Partners common units and Class B units, voting as a class, to consummate the merger, and (ii) a "force the vote" provision, requiring each party to submit the transaction for approval by ONEOK Inc. stockholders and ONEOK Partners unitholders, regardless of a change in recommendation by either board or the Conflicts Committee.

37.     On January 26, 2017, the Conflicts Committee held a meeting during which Barclays updated the Conflicts Committee as to financial projections provided by ONEOK Inc.

and ONEOK Partners GP management and certain preliminary financial analyses relating to the proposed merger.

38.     Following discussion the next day, the Conflicts Committee authorized Barclays to provide ONEOK Inc. management a counterproposal that contemplated an exchange ratio of 1.05 shares of ONEOK Inc. common stock per ONEOK Partners common unit, public guidance from ONEOK Inc. management of an immediate dividend increase to $0.72 per share of ONEOK Inc. common stock and public guidance from ONEOK Inc. of a 10% dividend growth rate thereafter.

39.     Also on January 27, 2017, the Partnership sent a revised draft merger agreement to ONEOK Inc., which, among other things, (i) included a requirement that the merger be approved by a majority of the common units held by unaffiliated unitholders, which provision was ultimately excluded from the Merger Agreement, and (ii) eliminated the "force the vote" provision.

40.     On January 28 and January 29, 2017, ONEOK Inc., the Conflicts Committee and their advisors, negotiated the terms of the proposal and ultimately agreed to an exchange ratio of 0.985 of a share of ONEOK Inc. common stock, a target post-closing quarterly dividend of $0.745 per share of ONEOK Inc. common stock, and anticipated dividend growth guidance of 9-11%.

41.     On January 31, 2017, the Conflicts Committee held a meeting during which Barclays rendered its fairness opinion and the Conflicts Committee approved the Merger Agreement.  The Board then held a meeting and also approved the Merger Agreement.  Later that day, the Partnership and ONEOK Inc. executed the Merger Agreement.

**The Proposed Transaction**

42.     On February 1, 2017, the Partnership and ONEOK Inc. issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> TULSA, Okla., Feb. 1, 2017 -- ONEOK, Inc. (NYSE: OKE) and ONEOK Partners, L.P. (NYSE: OKS) today announced a definitive agreement under which ONEOK

will acquire all of the outstanding common units of ONEOK Partners it does not already own for $9.3 billion in ONEOK common stock.

Under the agreement, each outstanding common unit of ONEOK Partners that ONEOK does not already own will be converted into .985 shares of ONEOK common stock, representing a 22.4 percent premium to the ONEOK Partners closing price on Jan. 27, 2017.

Completion of the transaction is expected to occur in the second quarter of 2017. As a result of the transaction, ONEOK's annual DCF is expected to approximately double.  Consequently, management intends to recommend to the ONEOK Board of Directors a 21 percent increase in the first quarterly dividend following the completion of the transaction and expects a 9 to 11 percent annual dividend growth rate through 2021. Following the close of the transaction, ONEOK is expected to have a more than $30 billion enterprise value and will continue to operate as a leading diversified midstream service provider with an integrated 37,000-mile network of natural gas liquids and natural gas pipelines, processing plants, fractionators and storage facilities located in the Williston Basin, Mid-Continent, Permian Basin, Midwest and Gulf Coast.

* * *

"This acquisition of the balance of ONEOK Partners underscores the strategic value we place on the business we have successfully built since we ventured into the midstream space nearly 20 years ago," said Terry K. Spencer, president and chief executive officer of ONEOK and ONEOK Partners. "A broad asset footprint, stable cash flows and attractive growth prospects remain core to our long-term growth strategy. Through the acquisition of the 60 percent of the limited partner interests in ONEOK Partners that ONEOK does not already own, ONEOK becomes a standalone operating company with a lower cost of funding and stronger cash flow generation.

**The Registration Statement Contains Numerous Material Misstatements or Omissions**

43.    The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to ONEOK Partners' unitholders.  The Registration Statement misrepresents or omits material information that is necessary for the Partnership's unitholders to make an informed voting decision in connection with the Proposed Transaction.

44.    Specifically, as set forth below, the Registration Statement fails to provide Partnership unitholders with material information or provides them with materially misleading information concerning: (i) certain financial projections of ONEOK Partners, ONEOK Inc. and

the Pro Forma ONEOK relied upon by ONEOK Partners' financial advisor, Barclays; (ii) the data and inputs underlying the financial valuation analyses prepared by Barclays in connection with the rendering of its fairness opinion; and (iii) potential conflicts of interest.  Accordingly, ONEOK Partners' unitholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

**Material Omissions Concerning ONEOK Partners, ONEOK Inc. and the Pro Forma Company's Financial Projections**

45.     The Registration Statement fails to disclose material information relating to the financial projections provided by ONEOK Partners' management and relied upon by Barclays for its analyses.

46.     For example, the Registration Statement discloses projections for various non-GAAP metrics for ONEOK Partners, ONEOK Inc. and Pro Forma ONEOK, including Adjusted EBITDA, distributable cash flow, distributions per unit and cash flow available for dividends, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP.  The omission of the aforementioned line item projections renders the non-GAAP projections included in the Registration Statement materially misleading and incomplete.

47.     The Registration Statement further fails to disclose the projected unlevered after-tax free cash flows for ONEOK Partners and ONEOK Inc., or the line items used to calculate unlevered after-tax free cash flows, as well as extrapolations for calendar year 2022 through 2026 which were reviewed and approved by ONEOK Inc.'s and ONEOK Partners GP's management as reasonable extrapolations of the ONEOK Inc. and ONEOK Partners 2017 through 2021 expected case financial forecasts.  *See* Registration Statement at 58.

48.     In addition, the Registration Statement states on page 52 that "[t]he following tables sets forth certain projected financial information for ONEOK [Inc.], ONEOK Partners *and the pro forma company* for 2016 through 2021 with respect to the flat case" (emphasis added), yet the Registration Statement fails to disclose any Pro Forma ONEOK projections with respect to the flat case.  Specifically, although the Registration Statement discloses certain projections for Pro Forma ONEOK with respect to the expected case, including Adjusted EBITDA, distributable cash flow and dividends per share, these projections are not disclosed for the flat case.  The projected dividends per share are particularly material to ONEOK Partners' unitholders as the Conflicts Committee determined that the Proposed Transaction would only be acceptable if "the total expected annual dividends on the shares of ONEOK [Inc.] common stock to be received would project to be accretive to the unaffiliated unitholders in 2020 and 2021 as compared to the distributions contemplated under the standalone ONEOK Partners forecast."  *See* Registration Statement at 41.

49.     With respect to the pro forma impact of the Proposed Transaction on the combined company, the Registration Statement further fails to disclose the projected (a) amounts and timing of the cost savings and estimated tax savings (collectively, the "Expected Synergies") and (b) ONEOK Inc.'s estimates of quarterly dividend growth through 2021, the anticipated impact on dividend coverage ratios, cash available for distributions to shareholders of the combined company and credit ratings (collectively, the "Expected Benefits"), which were prepared by management of ONEOK Inc. and ONEOK Partners GP, and relied upon by Barclays for purposes of its analyses.

50.     Moreover, the Registration Statement entirely fails to disclose the Wall Street analyst estimates through 2020 and 2021 (the "Research Case Projections") for ONEOK Partners,

ONEOK Inc. and Pro Forma ONEOK, which were relied upon by Barclays for purposes of its analysis, including its *Discounted Cash Flow ("DCF") Analysis.*

51.     The disclosure of this projected financial information is material because it provides unitholders with a basis to project the future financial performance of the Partnership and the combined company, and allows unitholders to better understand the financial analyses Barclays performed in support of its fairness opinion.

52.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 49-52 of the Registration Statement:

Unaudited Projected Financial Information

* * *

The following table sets forth certain projected financial information for ONEOK, ONEOK Partners and the pro forma company for 2016 through 2021 with respect to the expected case:

| | 2016E | 2017E | 2018E | 2019E | 2020E | 2021E |
|---|---|---|---|---|---|---|
| | | | *(Millions of dollars, except per share/unit amounts and commodity prices)* | | | |
| **Commodity price assumptions** | | | | | | |
| Henry Hub Natural Gas ($/MMBtu) | $ 2.45 | $ 3.00 | $ 2.90 | $ 3.15 | $ 3.20 | $ 3.30 |
| NGL Composite ($/gallon) (1) | $ 0.42 | $ 0.51 | $ 0.54 | $ 0.61 | $ 0.67 | $ 0.71 |
| WTI Crude Oil ($/Bbl) | $ 42.58 | $ 45.00 | $ 54.00 | $ 60.00 | $ 65.00 | $ 67.00 |
| **ONEOK Partners** | | | | | | |
| Adjusted EBITDA (2) | $ 1,838 | $ 1,994 | $ 2,314 | $ 2,487 | $ 2,628 | $ 2,725 |
| Distributable cash flow (3) | $ 1,413 | $ 1,447 | $ 1,700 | $ 1,838 | $ 1,947 | $ 2,021 |
| Distributions per unit | $ 3.16 | $ 3.19 | $ 3.37 | $ 3.59 | $ 3.86 | $ 4.14 |
| **ONEOK** | | | | | | |
| Distributions from ONEOK Partners | $ 790 | $ 802 | $ 872 | $ 962 | $ 1,068 | $ 1,180 |
| Cash flow available for dividends (4) | $ 681 | $ 671 | $ 605 | $ 684 | $ 693 | $ 773 |
| Dividends per share | $ 2.46 | $ 2.49 | $ 2.64 | $ 2.85 | $ 3.12 | $ 3.42 |
| **Pro Forma ONEOK** | | | | | | |
| Adjusted EBITDA (2) | $ NA | $ 1,994 | $ 2,314 | $ 2,487 | $ 2,615 | $ 2,712 |
| Distributable cash flow (3) | $ NA | $ 1,370 | $ 1,658 | $ 1,808 | $ 1,917 | $ 2,010 |
| Dividends per share (5) | $ NA | $ 2.98 | $ 3.28 | $ 3.61 | $ 3.97 | $ 4.36 |

*Years Ending December 31,*

(1)     NGL Composition: 21% Ethane, 52% Propane, 17% Normal Butane, 6% Iso-Butane and 4% Natural Gasoline.

(2)     Adjusted EBITDA is a non-GAAP measure of financial performance and is defined as net income adjusted for interest expense, depreciation and amortization,

income taxes, allowance for equity funds used during construction and certain other noncash items.

(3)     Distributable cash flow is a non-GAAP measure of financial performance and is defined as adjusted EBITDA, computed as described above, less interest expense, maintenance capital expenditures and equity earnings from investments, adjusted for cash distributions received and certain other items.

(4)     Cash flow available for dividends is a non-GAAP measure of financial performance and is defined as cash distributions declared from ONEOK's ownership in ONEOK Partners adjusted for ONEOK's standalone interest expense, corporate expenses, excluding certain noncash items, payments related to released contracts from ONEOK's former energy services business, capital expenditures and equity compensation reimbursed by ONEOK Partners.

(5)     2017E dividend of $0.745 per share annualized; thereafter, reflects dividend growth of 10% per annum.

The following table sets forth certain projected financial information for ONEOK, ONEOK Partners and the pro forma company for 2016 through 2021 with respect to the flat case:

| | 2016E | 2017E | 2018E | 2019E | 2020E | 2021E |
|---|---|---|---|---|---|---|
| | | | | *(Millions of dollars, except per share/unit amounts and commodity prices)* | | |
| **Commodity price assumptions** | | | | | | |
| Henry Hub Natural Gas ($/MMBtu) | $ 2.45 | $ 3.00 | $ 3.00 | $ 3.00 | $ 3.00 | $ 3.00 |
| NGL Composite ($/gallon) (1) | $ 0.42 | $ 0.51 | $ 0.52 | $ 0.51 | $ 0.55 | $ 0.57 |
| WTI Crude Oil ($/Bbl) | $ 42.58 | $ 45.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 |
| **ONEOK Partners** | | | | | | |
| Adjusted EBITDA (2) | $ 1,838 | $ 1,934 | $ 2,187 | $ 2,293 | $ 2,340 | $ 2,383 |
| Distributable cash flow (3) | $ 1,413 | $ 1,385 | $ 1,581 | $ 1,655 | $ 1,674 | $ 1,700 |
| Distributions per unit | $ 3.16 | $ 3.16 | $ 3.24 | $ 3.36 | $ 3.50 | $ 3.66 |
| **ONEOK** | | | | | | |
| Distributions received from ONEOK Partners | $ 790 | $ 790 | $ 820 | $ 868 | $ 926 | $ 990 |
| Cash flow available for dividends (4) | $ 681 | $ 661 | $ 577 | $ 630 | $ 611 | $ 657 |
| Dividends per share | $ 2.46 | $ 2.46 | $ 2.51 | $ 2.62 | $ 2.76 | $ 2.92 |

(1)     NGL Composition: 21% Ethane, 52% Propane, 17% Normal Butane, 6% Iso-Butane and 4% Natural Gasoline

(2)     Adjusted EBITDA is a non-GAAP measure of financial performance and is defined as net income adjusted for interest expense, depreciation and amortization, income taxes, allowance for equity funds used during construction and certain other noncash items.

(3)     Distributable cash flow is a non-GAAP measure of financial performance and is defined as adjusted EBITDA, computed as described above, less interest

expense, maintenance capital expenditures and equity earnings from investments, adjusted for cash distributions received and certain other items.

(4)     Cash flow available for dividends is a non-GAAP measure of financial performance and is defined as cash distributions declared from ONEOK's ownership in ONEOK Partners adjusted for ONEOK's standalone interest expense, corporate expenses, excluding certain noncash items, payments related to released contracts from ONEOK's former energy services business, capital expenditures and equity compensation reimbursed by ONEOK Partners.

**Material Omissions Concerning Barclays' Financial Analyses**

53.     The Registration Statement describes Barclays' fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, ONEOK Partners' public unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to ONEOK Partners' unitholders.

54.     For example, with respect to Barclays' *DCF Analysis* on pages 67-69 of the Registration Statement, the Registration Statement fails to disclose: (a) the individual inputs and assumptions utilized by Barclays to derive the discount rate ranges utilized for its DCF analyses of ONEOK Partners, ONEOK and Pro Forma ONEOK; and (b) the adjustments Barclays made to the Expected Case Projections of cash available for distribution ("CAFD") for Pro Forma ONEOK and the related assumptions as to Pro Forma ONEOK's projected debt, interest expense payments and selling, general and administrative expenses.

55.     In addition, with respect to Barclays' *Selected Comparable Company Trading Analysis*, the Registration Statement fails to disclose the individual multiples for each of the selected public companies analyzed by Barclays, as well as any benchmarking analyses Barclays performed for

ONEOK Partners in relation to the selected public companies.  Similarly, with respect to Barclays' *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Barclays, as well as any benchmarking analyses Barclays performed for ONEOK Partners in relation to the target companies.  Without this omitted information, ONEOK Partners unitholders have no way of determining whether the multiples applied by Barclays were appropriate when compared to the multiples observed for the selected companies and transactions, and thus, have no way of determining whether the implied per unit reference ranges accurately reflect the value of their units.

56.    The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

(a)    From pages 67-71 of the Registration Statement:

**Discounted Cash Flow Analysis**

In order to estimate the present values of ONEOK Partners common units, shares of ONEOK common stock and Pro Forma ONEOK Shares, Barclays performed Discounted Cash Flow Analyses for each of ONEOK Partners, ONEOK and Pro Forma ONEOK. A discounted cash flow analysis is a traditional valuation methodology used to derive an intrinsic valuation of an asset by calculating the "present value" of estimated future cash flows of the asset; in this case, the "present value" of the estimated future distributable cash flows ("DCF") of ONEOK Partners common units and the estimated after-tax CAFD of each of shares of ONEOK common stock and Pro Forma ONEOK Shares, as applicable, plus the estimated value of the ONEOK Partners common units, shares of ONEOK common stock and Pro Forma ONEOK Shares, as applicable, at the end of the forecast period based on the estimated DCF or distributions of the applicable entity in the final year of such period (the "terminal value"). "Present value" refers to the current value of future cash flows or amounts and is obtained by discounting those estimated future DCF and estimated CAFD, as appropriate, by a range of discount rates that takes into account macroeconomic assumptions and estimates of risk, the opportunity cost of capital, expected returns, the time value of money, and other appropriate factors.

In deriving its Discounted Cash Flow Analysis valuation range for each of ONEOK Partners, ONEOK and Pro Forma ONEOK, Barclays considered three sets of financial projections (collectively, the "Cases") for each of ONEOK Partners, ONEOK and Pro Forma ONEOK: the first two Cases were the Expected Case

Projections and the Flat Case Projections (each as presented in the section entitled "—Unaudited Projected Financial Information," other than the Flat Case Projections for Pro Forma ONEOK, which are described in the following paragraph, and, as described therein, the Cases differ by reason of using differing ONEOK management assumptions regarding commodity prices), and the third Case was based on Wall Street analyst estimates through 2020 and 2021 estimates were assumed to be equal to 2020 estimates ("Research Case Projections"). In the case of Pro Forma ONEOK, Barclays also took into account the Expected Synergies and the Expected Benefits of the proposed transaction, as provided by management of ONEOK and ONEOK Partners GP.

With regard to the Pro Forma ONEOK Flat Case Projections and the Pro Forma ONEOK Research Case Projections, Barclays considered the adjustments used to derive the Pro Forma ONEOK Expected Case Projections from the ONEOK and ONEOK Partners Expected Case Projections, in each case as prepared by management of ONEOK and ONEOK Partners GP. Barclays then applied the same adjustments to the ONEOK and ONEOK Partners Flat Case Projections to derive the Pro Forma ONEOK Flat Case Projections. Barclays also applied these adjustments to the ONEOK and ONEOK Partners Research Case Projections to derive the Pro Forma ONEOK Research Case Projections.

In addition, with respect to the Expected Case Projections of CAFD for Pro Forma ONEOK used by Barclays in this analysis and the subsequent analyses, based on Barclays' professional judgment and expertise, Barclays made certain adjustments to such projections to reflect certain assumptions as to Pro Forma ONEOK's projected debt, interest expense payments and selling, general and administrative expenses, in each case in the projected periods. These adjustments to the Expected Case Projections for Pro Forma ONEOK's CAFD described in the section entitled "—Unaudited Projected Financial Information," resulted in Expected Case Pro Forma ONEOK's CAFD being reduced to $1,354 million in 2017, $1,637 million in 2018, $1,794 million in 2019, $1,915 million in 2020 and $2,002 million in 2021.

To calculate ONEOK Partners' estimated implied per LP unit equity value reference range for each of the three Cases, Barclays considered (i) projected DCF per ONEOK Partners common unit for 2017 through 2021 and (ii) the terminal value at the end of the forecast period, as of December 31, 2021. These projected cash flows and terminal value were discounted back to present value using selected discount rates based on Barclays' professional judgment and expertise, taking into account cost of equity capital rates for ONEOK Partners and the comparable companies utilized in the Selected Comparable Company Trading Analysis described below. Barclays used a discount rate range of 9.50%-11.50% in its Discounted Cash Flow Analysis of ONEOK Partners; this discount rate range was chosen by Barclays based on its professional judgment and expertise, including its analysis of the cost of equity for ONEOK Partners, taking into account a Capital Asset Pricing Model ("CAPM") analysis of ONEOK Partners and its selected comparable companies utilized in the Selected Comparable Company Trading

Analysis. The terminal value of the ONEOK Partners common units was calculated by utilizing a DCF yield reference range of 7.65%-8.65% and ONEOK Partners' 2021 estimated DCF per ONEOK Partners common unit in each of the three Cases. This DCF yield reference range was selected based on Barclays' professional judgment and expertise, taking into account DCF yields of ONEOK Partners' comparable companies utilized in the Selected Comparable Company Trading Analysis and considering ONEOK Partners' 2017E DCF yield of 8.15% utilizing Wall Street research analyst DCF yield estimates. The results of Barclays' Discounted Cash Flow Analysis for ONEOK Partners are summarized in the table at the end of this section.

To calculate ONEOK's estimated implied per share equity value reference range for each of the three Cases, Barclays considered (i) projected CAFD per share of ONEOK common stock for 2017 through 2021 and (ii) the terminal value at the end of the forecast period, as of December 31, 2021. These projected cash flows and terminal value were discounted back to present value using selected discount rates based on Barclays' professional judgment and expertise, taking into account cost of equity capital rates for ONEOK and the comparable companies utilized in the Selected Comparable Company Trading Analysis described below. Barclays used a discount rate range of 11.50%-13.50% in its Discounted Cash Flow Analysis of ONEOK; this discount rate range was chosen by Barclays based on its professional judgment and expertise, including its analysis of the cost of equity for ONEOK, taking into account a CAPM analysis of ONEOK and its selected comparable companies utilized in the Selected Comparable Company Trading Analysis. The terminal value of the shares of ONEOK common stock was calculated by utilizing a CAFD yield reference range of 5.00%-6.00% and ONEOK's 2021 estimated CAFD per share in each of the three Cases. This CAFD yield reference range was selected based on Barclays' professional judgment and expertise, taking into account CAFD yields of ONEOK's comparable companies utilized in the Selected Comparable Company Trading Analysis and considering ONEOK's 2017E CAFD yield of 5.47%, utilizing Wall Street research analyst CAFD yield estimates. The results of Barclays' Discounted Cash Flow Analysis for ONEOK are summarized in the table at the end of this section.

To calculate Pro Forma ONEOK's estimated implied per share equity value reference range for each of the three Cases, Barclays considered (i) projected CAFD per Pro Forma ONEOK Share for 2017 through 2021, (ii) the terminal value at the end of the forecast period, as of December 31, 2021, and (iii) the value of the Expected Synergies remaining at the end of the forecast period. Per share values considered status quo shares of ONEOK common stock plus shares of ONEOK common stock to be issued to ONEOK Partners unaffiliated unitholders as part of the proposed transaction based on the exchange ratio, in each case using estimated shares and units outstanding per the applicable period contained in the Cases. These projected cash flows, terminal value and the remaining value of the Expected Synergies were discounted back to present value using selected discount rates based on Barclays' professional judgment and expertise, taking into account cost of equity

capital rates for ONEOK and the comparable companies utilized in the Selected Comparable Company Trading Analysis described below. Barclays used a discount rate range of 9.50%-11.50% in its Discounted Cash Flow Analysis of Pro Forma ONEOK; this discount rate range was chosen by Barclays based on its professional judgment and expertise, including its analysis of the cost of equity for Pro Forma ONEOK, taking into account a CAPM analysis of Pro Forma ONEOK and its selected comparable companies utilized in the Selected Comparable Company Trading Analysis. The terminal value of the Pro Forma ONEOK Shares was calculated by utilizing a CAFD yield reference range of 5.00%-6.00% and Pro Forma ONEOK's 2021 estimated CAFD per share in each of the three Cases, which was adjusted to exclude the tax savings expected to result from the step-up in the tax basis in the ONEOK Partners assets as a result of the proposed transaction, as the remaining value of the Expected Synergies was calculated separately. This CAFD yield reference range was selected based on Barclays' professional judgment and expertise, taking into account CAFD yields of Pro Forma ONEOK's comparable companies utilized in the Selected Comparable Company Trading Analysis, and considering ONEOK's 2017E CAFD yield of 5.47%, utilizing Wall Street research analyst CAFD yield estimates. The results of Barclays' Discounted Cash Flow Analysis for Pro Forma ONEOK are summarized in the table below.

## Summary of Discounted Cash Flow Analyses

| Company: | Implied per LP Unit / Share Equity Value Reference Range | | |
| | Expected Case Projections | Flat Case Projections | Research Case Projections |
| --- | --- | --- | --- |
| ONEOK Partners | $ 44.50-$51.50 | $ 39.50-$46.00 | $ 40.50-$47.00 |
| ONEOK | $ 44.00-$54.00 | $ 38.50-$47.00 | $ 40.50-$49.50 |
| Pro Forma ONEOK | $ 63.50-$77.00 | $ 53.50-$64.50 | $ 56.00-$67.50 |

Barclays noted that the implied equity value of $52.96 per ONEOK Partners common unit, based on the proposed transaction exchange ratio of 0.9850x shares of ONEOK common stock per ONEOK Partners common unit and ONEOK's closing price on January 30, 2017, was higher than the implied per LP unit equity value reference ranges yielded by the ONEOK Partners discounted cash flow analysis. Barclays also noted that the closing ONEOK common stock share price of $53.77 on January 30, 2017 was (i) higher than the implied per share equity value reference range yielded by the ONEOK discounted cash flow analysis in the Flat Case Projections and the Research Case Projections, (ii) within the implied per share equity value reference range yielded by the ONEOK discounted cash flow analysis in the Expected Case Projections, (iii) below the implied per share equity value reference range yielded by the Pro Forma ONEOK discounted cash flow analysis in the Expected Case Projections and the Research Case Projections, and (iv) within the implied per share equity value reference range yielded by the Pro Forma ONEOK discounted cash flow analysis in the Flat Case Projections.

### *Selected Comparable Company Trading Analysis*

In order to assess how the public market values equity ownership of similar publicly traded companies, Barclays reviewed and compared specific financial and operating data relating to ONEOK Partners, ONEOK and Pro Forma ONEOK to those of companies selected by Barclays based on Barclays' experience with midstream MLPs and C-Corporations. None of the companies selected were subsequently excluded in conducting this analysis. Barclays selected the comparable companies listed below because their businesses and operating profiles are reasonably similar to each of ONEOK Partners, ONEOK and Pro Forma ONEOK. However, because no selected comparable company is exactly the same as ONEOK Partners, ONEOK or Pro Forma ONEOK, Barclays believed that it was inappropriate to, and therefore did not, rely solely on the quantitative results of the selected comparable company trading analysis. Accordingly, Barclays also made qualitative judgments concerning differences between the business, financial and operating characteristics and prospects of each of ONEOK Partners, ONEOK and Pro Forma ONEOK, and the respective selected comparable companies that could affect the public trading values of each in order to provide a context in which to consider the results of the quantitative analysis. These qualitative judgments related primarily to the differing sizes, growth prospects, profitability levels and degree of operational risk between each of ONEOK Partners, ONEOK and Pro Forma ONEOK, and the respective companies included in the selected comparable company trading analysis. Based upon these judgments, Barclays selected the ranges noted below for each of ONEOK Partners, ONEOK and Pro Forma ONEOK.

Barclays selected the following nine comparable midstream companies for its analysis of ONEOK Partners:

- Enbridge Energy Partners, L.P.

- Energy Transfer Partners, L.P. (pro forma after giving effect to the November 2016 combination with Sunoco Logistics Partners L.P.)

- Enterprise Products Partners L.P.

- Williams Partners, L.P.

- EnLink Midstream Partners, LP

- MPLX, L.P.

- DCP Midstream, LP

- Enable Midstream Partners, LP

- Western Gas Partners, LP

In its Selected Comparable Company Trading Analysis of ONEOK Partners, Barclays considered the following metrics: latest quarter annualized cash distributions ("LQA Distributions") to holders of units representing limited partner interests ("LP units"), projected DCF per LP unit ("DCF / LP Unit") for 2017 and 2018, and 2017 estimated EBITDA. These metrics were chosen based on Barclays' professional judgment and expertise, taking into account the importance of such metrics in the financial analysis of ONEOK Partners' selected comparable companies.

In the case of LQA Distributions to holders of LP units and 2017 and 2018 DCF / LP unit, ONEOK Partners' Wall Street research analyst projections were applied to a low and high yield range based on the comparable companies to derive an implied per LP unit equity value reference range. In the case of 2017 estimated EBITDA, ONEOK Partners' Wall Street research analyst projections were applied to a low and high multiple range to derive an implied enterprise value reference range.

The implied enterprise value reference range was adjusted by net debt, general partner equity value and noncontrolling interests to derive an implied aggregate equity value reference range. General partner equity value was calculated by subtracting the market value of ONEOK Partners units beneficially owned by ONEOK and ONEOK Partners GP as of January 30, 2017 from the total market value of ONEOK equity as of January 30, 2017. The implied aggregate equity value reference range was divided by ONEOK Partners common units outstanding as of September 30, 2016 per the merger agreement (which included the ONEOK Partners Class B units on an as-converted basis) to derive an implied per LP unit equity value reference range. The multiples applied in the analysis are summarized below.

| Metric: | ONEOK Partners Selected Comparable Company Multiple / Yield Range | | ONEOK Partners |
| --- | --- | --- | --- |
| | Low | High | |
| LQA Distribution | 8.75% | 6.75% | 7.42% |
| 2017E DCF / LP Unit | 8.75% | 6.75% | 8.15% |
| 2018E DCF / LP Unit | 8.75% | 6.75% | 8.74% |
| 2017E EBITDA | 12.5x | 14.5x | 13.2x |

Barclays considered the four metrics above; the weighting of each in its Selected Comparable Company Trading Analysis of ONEOK Partners is based on Barclays' professional judgment and expertise. The results of Barclays' Selected Comparable Company Trading Analysis for ONEOK Partners are summarized in the table at the end of this section.

(b)    From pages 74-75 of the Registration Statement

***Selected Precedent Transactions Analysis***

Barclays conducted its Selected Precedent Transactions Analysis to provide an additional reference range for the valuation of ONEOK Partners common units. Barclays reviewed and compared the purchase prices and financial multiples paid in selected other transactions that Barclays deemed relevant based on its experience with merger and acquisition transactions, specifically in the midstream industry. Barclays chose such merger transactions based on, among other things, the similarity of the applicable companies to ONEOK Partners and ONEOK with respect principally to size and operational focus and because the targets involved were MLPs or limited liability companies. None of the transactions selected based on the criteria were subsequently excluded in conducting this analysis. The following list sets forth the transactions analyzed based on such characteristics:

| Acquirer | Target | Announcement Date |
|---|---|---|
| Sunoco Logistics Partners, L.P. | Energy Transfer Partners, L.P. | November 2016 |
| TransCanada Corporation | Columbia Pipeline Partners, L.P. | November 2016 |
| Energy Transfer Partners, L.P. | PennTex Midstream Partners, L.P. | October 2016 |
| American Midstream Partners, L.P. | JP Energy Partners, L.P. | October 2016 |
| MPLX, L.P. | Markwest Energy Partners, L.P. | July 2015 |
| Crestwood Equity Partners, L.P. | Crestwood Midstream Partners, L.P. | May 2015 |
| Energy Transfer Partners, L.P. | Regency Energy Partners, L.P. | January 2015 |
| Targa Resources Partners, L.P. | Atlas Pipeline Partners, L.P. | October 2014 |
| Enterprise Products Partners L.P. | Oiltanking Partners, L.P. | October 2014 |
| Access Midstream Partners, L.P. | Williams Partners, L.P. | June 2014 |
| Regency Energy Partners, L.P. | PVR Partners, L.P. | October 2013 |
| Inergy Midstream, L.P. | Crestwood Midstream Partners, L.P. | May 2013 |
| Kinder Morgan Energy Partners, L.P. | Copano Energy, L.L.C. | January 2013 |
| Enterprise Products Partners L.P. | Duncan Energy Partners, L.P. | April 2011 |
| Enterprise Products Partners L.P. | TEPPCO Partners, L.P. | June 2009 |
| Plains All-American Pipeline, L.P. | Pacific Energy Partners, L.P. | June 2006 |
| Valero, L.P. | Kaneb Pipe Line Partners, L.P. | November 2004 |
| Enterprise Products Partners L.P. | Gulfterra Energy Partners, L.P. | December 2003 |
| Kinder Morgan Energy Partners, L.P. | Santa Fe Pacific Pipeline Partners, L.P. | October 1997 |

Using publicly available information, Barclays calculated and analyzed the multiples of enterprise value to last twelve month ("LTM") EBITDA, represented by the prices paid in selected precedent transactions. Barclays observed that the multiples of enterprise value to LTM EBITDA represented by the selected precedent transactions ranged from 8.1x to 25.9x with a median of 15.0x, and based on the judgments noted below, Barclays selected a range of 14.5x to 16.5x from such results.

The reasons for and the circumstances surrounding each of the selected precedent transactions analyzed were diverse and there are inherent differences between the businesses, operations, financial conditions and prospects of ONEOK Partners, and the entities included in the selected precedent transactions analysis. Accordingly, Barclays believed that a purely quantitative selected precedent transactions analysis would not be particularly meaningful in the context of considering the proposed transaction. Barclays therefore made qualitative judgments concerning differences between the characteristics of the selected precedent transactions and the proposed

transaction which would affect the acquisition values of the selected target companies and ONEOK Partners.

ONEOK Partners' Expected Case Projections 2016 EBITDA was applied to the multiple range above to derive an implied enterprise value reference range. This range was adjusted by net debt, general partner equity value and noncontrolling interests to derive an implied aggregate equity value reference range. General partner equity value was calculated by subtracting the market value of ONEOK Partners units owned by ONEOK as of January 30, 2017 from the total market value of ONEOK equity as of January 30, 2017. The implied aggregate equity value reference range was divided by diluted ONEOK Partners common units outstanding as of September 30, 2016 per the merger agreement (which included the ONEOK Partners Class B units on an as-converted basis) to derive an implied per LP unit equity value reference range. The results of Barclays' Selected Precedent Transaction Analysis for ONEOK Partners are summarized below.

**Summary of Selected Precedent Transaction Analysis**

| Company: | Implied per LP Unit / Share Equity Value Reference Range |
|---|---|
| ONEOK Partners | $ 44.00-$56.00 |

Barclays noted that the implied equity value of $52.96 per ONEOK Partners common unit, based on the proposed transaction exchange ratio of 0.9850x shares of ONEOK common stock per ONEOK Partners common unit and ONEOK's closing price on January 30, 2017, was within the implied per LP unit equity value reference range yielded by the ONEOK Partners selected precedent transaction analysis.

57.     Without such undisclosed information, ONEOK Partners unitholders cannot evaluate for themselves whether the financial analyses performed by Barclays were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that unitholders can fully evaluate the extent to which Barclays' fairness opinion and analyses should factor into their decision whether to vote in favor of the Proposed Transaction.

***Material Omissions Concerning Potential Conflicts of Interest***

58.     The Registration Statement also fails to disclose material information relating to potential conflicts of interest.  The Registration Statement states that the Conflicts Committee is a "special committee of independent directors."  However, the Registration Statement fails to disclose defendant Hutchinson's ties to defendant Gibson and ONE Gas, formerly ONEOK Inc.'s natural gas distribution business.  Defendant Hutchinson has served on the board of directors of ONE Gas since 2014 alongside defendant Gibson – Chairman of the ONE Gas board of directors, Chairman of the ONEOK Inc. board of directors and a former ONEOK Inc. executive.  In addition to defendant Gibson, two members of the ONE Gas board of directors, Pattye L. Moore and Eduardo A. Rodriguez, also serve on the ONEOK Inc. board of directors.  Although ONE Gas spun off from ONEOK Inc. in 2014, the companies have significant ties.  Indeed, ONE Gas' President, CEO and director, Pierce H. Norton II served as a ONEOK Inc. Executive Vice President prior to the spin off.  Multiple ONE Gas executive officers similarly held positions at ONEOK Inc. prior to the spin off.  This information is necessary for ONEOK Partners unitholders to understand potential conflicts of interest of the Conflicts Committee and the Board, as that information provides illumination concerning the independence of the Conflicts Committee and whether, as alleged in the Registration Statement, the Conflicts Committee's approval constitutes "Special Approval," as such term is defined by the ONEOK Partners partnership agreement.

59.     In addition, the Registration Statement states:

Barclays and its affiliates engage in a wide range of businesses from investment and commercial banking, lending, asset management and other financial and non-financial services. In the ordinary course of its business, Barclays and its affiliates may actively trade and effect transactions in the equity, debt and/or other securities (and any derivatives thereof) and financial instruments (including loans and other obligations) of ONEOK Partners and ONEOK and their respective affiliates for Barclays' own account and for the accounts of Barclays' customers and, accordingly, may at any time hold long or short positions and investments in such securities and financial instruments.

The Registration Statement is deficient because it fails to disclose (a) the value of any such investments that Barclays and certain of its affiliates have committed to, have, or expect to have, (b) the dates on which these commitments or investments were made, and (c) other pertinent details of such investments.  Based on the 13F-HR filed with the SEC by Barclays' parent company, Barclays and certain of its affiliates currently holds over 468,000 shares of ONEOK Inc. worth approximately $26.9 million.

60.     Full disclosure of all potential investment banker conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

61.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from page 44 of the Registration Statement:

The ONEOK Partners conflicts committee consists of three independent directors: Craig F. Strehl, Michael G. Hutchinson, and Gary N. Petersen. The ONEOK Partners board authorized the ONEOK Partners conflicts committee to (a) review and evaluate the proposed merger on behalf of ONEOK Partners, (b) negotiate, or delegate to any person or persons the ability to negotiate, the terms of the proposed merger on behalf of ONEOK Partners, (c) hire independent legal and financial advisors, (d) determine whether or not to approve the proposed merger by "Special Approval," as such term is defined by the ONEOK Partners partnership agreement, and (e) make such recommendations to the ONEOK Partners unaffiliated unitholders, regarding what action, if any should be taken by the ONEOK Partners unaffiliated unitholders with respect to the proposed merger.

(b)     from page 82 of the Registration Statement:

Barclays and its affiliates engage in a wide range of businesses from investment and commercial banking, lending, asset management and other financial and non-financial services. In the ordinary course of its business, Barclays and its affiliates may actively trade and effect transactions in the equity, debt and/or other securities (and any derivatives thereof) and financial instruments (including loans and other obligations) of ONEOK Partners and ONEOK and their respective affiliates for Barclays' own account and for the accounts of Barclays' customers and, accordingly, may at any time hold long or short positions and investments in such securities and financial instruments.

27

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act
And SEC Rule 14a-9 Promulgated Thereunder**

62.     Plaintiff repeats all previous allegations as if set forth in full.

63.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of

the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy
> statement, form of proxy, notice of meeting or other communication, written or
> oral, containing any statement which, at the time and in light of the circumstances
> under which it is made, is false or misleading with respect to any material fact, or
> which omits to state any material fact necessary in order to make the statements
> therein not false or misleading or necessary to correct any statement in any earlier
> communication with respect to the solicitation of a proxy for the same meeting or
> subject matter which has become false or misleading.

64.     During the relevant period, defendants disseminated the false and misleading

Registration Statement specified above, which failed to disclose material facts necessary in order

to make the statements made, in light of the circumstances under which they were made, not

misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated

thereunder.

65.     By virtue of their positions within the Partnership, the defendants were aware of

this information and of their duty to disclose this information in the Registration Statement.  The

Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  The

Registration Statement misrepresented and/or omitted material facts, including material

information about the unfair sale process for the Partnership, the financial analyses performed by

the Partnership's financial advisor, and the actual intrinsic standalone value of the Partnership.

The defendants were at least negligent in filing the Registration Statement with these materially

false and misleading statements.

66.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable unitholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to unitholders.

67.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

68.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

69.     Plaintiff repeats all previous allegations as if set forth in full.

70.     The Individual Defendants acted as controlling persons of ONEOK Partners within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of ONEOK Partners and participation in or awareness of the Partnership's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Partnership, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

73.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

74.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of ONEOK Partners, and against defendants, as follows:

A.       Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.       Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to ONEOK Partners unitholders;

C.       In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April __, 2017                          Respectfully submitted,

**OF COUNSEL**                                **LOCAL COUNSEL**

**WEISSLAW LLP**                              /s/Jack L. Brown
Richard A. Acocelli                            Charles Michael Copeland
Michael A. Rogovin                             Jones, Gotcher & Bogan, P.C.
Kelly C. Keenan                                15 E. 5th Street, Suite 3800
1500 Broadway, 16th Floor                      Tulsa, OK 74103
New York, New York 10036                       918-581-8200
Tel: (212) 682-3025                            *Attorneys for Plaintiff*
Fax: (212) 682-3010
*Attorneys for Plaintiff*